CLERK, U.S. BANKRUPTCY COURT
DISTRICT OF OREGON
SEP 1 0 2010
LODGED____ REC'D____
PAID____ DOCKETED____

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | Bankruptcy Case No. 08-63589-fra7 |
| MARIO TUCCI, | |
|         Debtor. | Adversary Proceeding No. 09-6031-fra |
| ALBERTO MIRANDA, | |
|         Plaintiff, | |
|   vs. | |
| MARIO TUCCI, | |
|         Defendant. | MEMORANDUM OPINION |

This Adversary Proceeding came on for trial on July 21, 2010. After carefully considering the testimony, exhibits and arguments of the parties I find for the Defendant.

I.  FACTS

In January 2001, Defendant Mario Tucci began working for Plaintiff Alberto Miranda, who was doing business under the trade name of Cafeto Coffees. Except for a five month hiatus in 2003, Tucci continued to work for, or with, Miranda until the spring of 2007.

// // //

Page 1 - MEMORANDUM OPINION

Cafeto's business consisted primarily of roasting and packaging coffee beans for sale to various local retail coffee companies. The product was, for the most part, sold to the end users through local grocery stores.

In September 2003, Tucci registered with the Oregon Secretary of State a new corporation, Mario Tucci, LLC. At the same time, he continued to work for Cafeto delivering coffees to various retail outlets, including several in southern Oregon. The run to Douglas, Josephine and Jackson County outlets was referred to by the parties as the "south deliveries."

In March of 2004, Tucci and Miranda discussed creation of a separate business under the trade name of Caffe' Onesto (Italian for "honest coffee"). Their intention was to satisfy a "perceived customer demand for old world, Italian style coffees," and to fill a niche in the coffee trade left by the recent failure of a competitor. Tucci proceeded to register Caffe' Onesto as an assumed business name of Mario Tucci, LLC.

After Caffe' Onesto was established under Tucci's corporation, Tucci and Miranda agreed on various blends that Caffe' Onesto would market. Miranda and Cafeto roasted and packaged the coffee beans and delivered them to Tucci/Caffe' Onesto on account. Tucci provided virtually no capital to the enterprise, and Miranda advanced the costs of the raw beans. The parties differ sharply over the origin of the various blends created by Miranda and marketed by Tucci: Miranda claims the recipes as his own, while Tucci asserts that they were developed through a collaborative process between the two.

Over a time, Tucci fell behind in payments to Miranda, eventually owing him over $13,000 on account. As Miranda stepped up his demands for payment, Tucci began searching for another product source. In March of 2007, he approached Charles Webber, who operated a local coffee roasting facility. They agreed that Webber (who subsequently incorporated his business as Wholesale Coffee, Inc.) would supply roasted and packaged beans, using the recipes previously produced by Miranda.[1] Soon after the relationship began, Coffee Wholesalers made changes to the blends, due to various factors. In particular, Coffee Wholesalers would substitute particular varieties, with Tucci's consent, (e.g. Nicaraguan for Columbian) in light of available inventory. Tucci testified that this practice was not uncommon, and typically did not affect the quality of the end product.

On October 1, 2007, Tucci and Webber agreed on the sale of Caffe' Onesto to Coffee Wholesalers for $12,600. The assets sold included the Caffe' Onesto trade name, names and accounts maintained by Caffe' Onesto, Caffe' Onesto trademarks and trade dress. Presumably, Caffe' Onesto, under its new ownership, continued to use the same blends.

Miranda sued Tucci in State Court on September 5, 2007. His complaint sought damages for breach of contract, an action on account, conversion, and violation of the Oregon Trade Secrets Act. The prayer sought $13,000 on the account, and over $100,000 damages on the conversion and trade secrets claims. Thereafter, the parties stipulated

---

[1] Throughout the time in question, Caffe' Onesto marketed at least four "Italian" blends, consisting of mixtures of three or four common coffee varieties. For example, Caffe' Onesto's "Firenze" contained a blend of Columbian, Sumatran and Brazilian beans.

Page 3 - MEMORANDUM OPINION

to entry of a judgment for $13,332.54 on the account claim. The conversion and Trade Secret Act claims were dismissed without prejudice.

Soon after the sale of Caffe' Onesto to Coffee Wholesalers, Shivan Tucci, Mario Tucci's wife, borrowed $16,100 in order to purchase a restaurant named Latitude X Cafe. The loan called for monthly payments of principal and interest of $742.93. After the sale of the Caffe Onesto business, the Defendant instructed Coffee Wholesalers, Inc. to make the monthly $700 payments to his wife, Shivan Tucci, who used the payments to pay business-related expenses of Latitude 10 Café, and for other expenses. Those payments continued from October 20, 2007 through April 2009.

Unable to pay his debts, including the debt to Miranda, Mario Tucci filed a petition for relief under Chapter 13 of the Bankruptcy Code on September 19, 2008. The schedules filed with the petition made no reference to the payments owed to him on the sale of Caffe' Onesto to Coffee Wholesalers. (The schedules were filed on October 6, 2008.) Confirmation of the plan was objected to by Miranda, who pointed out various deficiencies in Tucci's schedules. In addition, the Trustee objected, citing questions he had regarding whether the $700 monthly payment from Coffee Wholesalers was accounted for in Debtor's schedules.

Ultimately, confirmation was denied on two grounds: (1) insufficient evidence as to feasibility of the plan of reorganization with respect to the ability of the restaurant, upon which the Plan relied, to be consistently profitable, and (2) failure to show good faith in that Debtor could have, but did not, seek full time employment. Debtor thereafter chose to convert the case to one under Chapter 7. Schedule B,

filed as part of the conversion documents upon conversion to chapter 7, revealed a $1,400 asset consisting of the assignment of right to receive the two remaining $700 payments due the Defendant from Coffee Wholesalers, Inc.

## II. NATURE OF THE ADVERSARY PROCEEDING

Miranda filed a complaint in this matter setting out three claims for relief:

1) Denial of Defendant's general discharge under Code §§ 727(a)(2)(A) and (B),

2) Exception from discharge of Plaintiff's claim against Defendant under Code §§ 523(a)(2) and (6), in the amount of $100,332.54, and

3) Injunctive relief, enjoining Defendant from using the trade secrets of Plaintiff.

The § 727 claims are premised on Plaintiff's allegation that Defendant, with the intent to hinder, delay and defraud Plaintiff, transferred within one year of the bankruptcy petition date business property Plaintiff claims as his to the owners of Coffee Wholesalers, Inc.: trade secrets, ideas, customer lists, pricing information, coffee roasting recipes, business model, trade name and label design.

The § 523(a)(2) claim alleges that Defendant obtained the above-mentioned business property from Plaintiff by false pretenses and then converted and sold it to Defendant's business associates.

The § 523(a)(6) claim alleges that Defendant wilfully and maliciously misappropriated Plaintiff's trade secrets and converted them
// // //

to his own purposes and economic benefit by way of the sale to Coffee Wholesalers, Inc.

### III. DISCUSSION

A. 11 U.S.C. § 727(a)(2)(A) and (B):

> (a) The court shall grant the debtor a discharge, unless —
>
> * * *
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition; or
>
> (B) property of the estate, after the date of the filing of the petition;

Plaintiff argues that the Defendant's sale of Caffe' Onesto on October 1, 2007 was made with the intent to hinder, delay or defraud the Plaintiff. Defendant testified that he sold the business because he wasn't making enough money to pay his bills, including the amount he owed to the Plaintiff for purchases on account. He also testified that he considered the Caffe' Onesto business to be his and that he did not need to inform Miranda of the sale or request his permission. I find the Defendant's testimony to be credible and in accord with other evidence presented. I cannot find that Plaintiff has produced sufficient evidence to meet his burden to prove that the sale of the Caffe' Onesto business was made by Defendant with the intent to hinder, delay, or defraud the Plaintiff.

Page 6 - MEMORANDUM OPINION

B. 11 U.S.C. § 523(a)(2)(A):

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> * * *
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

In order to prove fraud under § 523(a)(2)(A), a creditor must prove by a preponderance of the evidence the following five elements: (1) the debtor made a material misrepresentation, (2) with knowledge of its falsity, (3) with the intent to deceive, (4) on which the creditor justifiably relied, and (5) due to which the creditor sustained loss or damage. In re Kirsh, 973 F.2d 1454, 1457 (9th Cir. 1992).

In order for Plaintiff to succeed in proving the first three elements of this claim, he must show that Defendant obtained the "money, property, or services" of Plaintiff with the intent, at the time that such was received, to appropriate that money, property, or services to his own use and benefit.

No credible evidence was presented at trial that the "trade secrets, ideas, customer lists, pricing information, coffee roasting recipes, business model, trade name and label design" of Caffe' Onesto, which Plaintiff claims were his, were acquired by Defendant, knowing that the property belonged to Plaintiff, and with the intention of depriving Plaintiff of the benefit of his property. In fact, the evidence shows that there may have been a collaboration between the Plaintiff and

Page 7 - MEMORANDUM OPINION

Defendant which resulted in Defendant creating his business and registering his business organization. While the Plaintiff may have provided his ideas as to types of coffee blends Tucci should sell, possible customers, etc., the Defendant testified that he created the business name, coffee blends, logos and other accouterments of his business. There was no partnership created - Plaintiff and Defendant did not share in the profit and loss of Caffe' Onesto. The relationship between the two became one of vendor and customer. Defendant stopped buying roasted beans from Plaintiff when, according to Defendant, Defendant became generally dissatisfied with the quality of the product provided and Plaintiff continued to make unauthorized substitutions which changed the taste of the coffee roasts and cost the Defendant customers. There is no evidence of intent on Defendant's part at the beginning of the relationship to take anything belonging to Plaintiff to the Plaintiff's detriment.

Nor was credible evidence presented that Defendant purchased roasted coffee from Plaintiff with the intent not to pay him. Testimony was given that Defendant started to fall behind on his payments to Plaintiff and Plaintiff chose to advance product on credit. The evidence shows that Defendant intended to pay Plaintiff for the product he received, and did make payments on the debt, but became financially unable to do so.

C. 11 U.S.C. § 523(a)(6):

Section 523(a)(6) bars discharge of a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The "willful" element requires proof that the debtor

either intended that the injury occur or that he had the subjective belief that injury was substantially certain to occur as a result of his conduct. The "malicious" injury element requires "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." In re Su, 259 B.R. 909, 912-14 (9th Cir. BAP 2001)(citing Petralia v. Jercich, 238 F.3d 1202 (9th Cir. 2001)), aff'd, 290 F.3d 1140 (9th Cir. 2002).

Plaintiff's claim essentially alleges that Defendant converted Plaintiff's trade secrets regarding coffee blends. First, it does not appear from the evidence presented that any trade secrets existed to convert. Miranda testified that it was not the "practice" in the coffee business to copyright blends. Tucci testified that he created the initial blends he used himself, or in collaboration with Miranda, and had Miranda roast and blend the beans for him. Some of what Tucci knew of the coffee trade was undoubtedly learned when he worked for Miranda, but there is no evidence that Tucci was required to sign any agreement protecting trade secrets either during his employment with Miranda or later when Tucci created the Caffe' Onesto business. Miranda noted that his knowledge of the blends grew over years of contact with various people in the coffee business. It is just as likely that Tucci's knowledge of blends was acquired the same way.

Finally, there is no evidence of damages relating to the alleged conversion of trade secrets. The only evidence presented was an exhibit presented by Miranda demonstrating how much Tucci had purchased from him over the course of a year. This does not translate into damages for loss of trade secrets. It does not, for instance, show loss of

Page 9 - MEMORANDUM OPINION

profit to Miranda's business related to Tucci's use of Miranda's trade secrets.

Because there is insufficient evidence that legally protected trade secrets belonging to Miranda were taken by Tucci or that Miranda was injured in some way, the Plaintiff's claim under § 523(a)(6) fails.

D. Equitable Relief:

As discussed earlier, while it appears that Miranda may have provided some suggestions when Tucci initially set up his Caffe' Onesto business, it does not appear, or at least it has not been proven sufficiently, that Tucci obtained or used any trade secrets belonging to Miranda that he could be compelled to desist from using. Absent a finding that Defendant had commercial trade secrets and that Defendant obtained those trade secrets from Plaintiff with the clear understanding that the disclosure was made in confidence, there can be no injunctive relief enjoining their use. See e.g. Incase, Inc. v. Timex Corp., 488 F.3d 46 (1st Cir. 2007).

## IV. CONCLUSION

For the reasons given, judgment will be entered by the Court for Defendant dismissing Plaintiff's claims. The Memorandum Opinion sets out the Court's Findings of Fact and Conclusions of Law.

FRANK R. ALLEY, III
Bankruptcy Judge

Page 10 - MEMORANDUM OPINION